Mitchell against Saul is our next case for argument. Mr. Richter. Good morning, your honors, and may it please the court, Matt Richter on behalf of Appellant. To begin with here, there is no disagreement that the ALJ relied on a vocational witness whose testimony was not accurate with regard to outcome-determinative issues. Whether the three jobs the ALJ concluded Appellant could perform could be performed as the Dictionary of Occupational Titles defines them by an individual with the limitations she concluded Appellant had in handling and crouching. There are two distinct issues here in this case, which concern the vocation. Mr. Richter, is there any chance you can pull a blind down behind you? When you have a bright background on Zoom, your face turns very hard to read. Unfortunately, your honor, I'm not sure if this blind works. I've never pulled it down at all. I'll try to turn this so we can. It is very important before you try to argue a case on Zoom to pay attention to what the consequence is of your background. Understood, your honor. This is a little better because the window is now out of the picture frame. Please proceed. Well, thank you. There are two distinct issues in this case, which concern the vocational witness's testimony, both of which independently require remand. One is the regulatory question under SSR 004P concerning whether the witness's testimony was so obviously in conflict with the Dictionary of Occupational Titles that the ALJ should have resolved it on her own in her decision with an evidence-based explanation for why the vocational witness was a greater authority on the issue than the authors of the Dictionary of Occupational Titles. The other question is whether the ALJ's simple reliance on flawed, inaccurate testimony could bear her evidentiary burden of demonstrating appellant. Mr. Richter, before we get to any of these, there is the problem that this was never pointed out to the ALJ. Why is it something that we should look at now? Well, your honor, that gets us to the Overman case. And the Overman case was a case similarly. The counsel that represented that claimant at administrative hearing did not point out the conflict with the Dictionary of Occupational Titles. And while the court there found that that conflict should have been apparent to the ALJ, it ultimately determined that even if it was not apparent to the ALJ, that it could not possibly support the conclusion of the ALJ with substantial evidence because the testimony was inaccurate. And reliance on vocational witness testimony, which is not accurate on outcome-determinative questions in the case. How do we know this is outcome-determinative? There are at least two job categories that your client can perform. So we're dealing with the possible difference between frequent and occasional with respect to one job category. Then there's the question, which certainly bugged me when reading these briefs, whether there is a real articulable distinction between frequent and occasional. These are the kinds of things that we expect to be handled at a hearing. Well, your honor, they are distinct from each other, frequent and occasional, and that is in Social Security's regulations. SSR 8310 defines occasional. Look, I'm not asking about regulation. I'm asking about whether it matters to Ms. Mitchell. Indeed it does. Well, you say that, but that was never explored at the hearing, nor was it explored at the hearing what the other job categories not affected by this error, whether that was enough to be substantial work in the national economy. As I say, why in the world should a court say, oh, yeah, it's fine just to ignore these at the hearing? That's not what's being said, your honor. That's not what the Overman court said. That's what you just said. It's fine to ignore these at the hearing. Your honor, I did not say that. But what I'll say is this. There were three jobs the ALJ concluded that Ms. Mitchell could perform. Each of those jobs either require frequent handling or occasional crouching, per the Dictionary of Occupational Titles. The Dictionary of Occupational Titles is the default for defining particular jobs under SSR004P. Now, the Overman court determined that it should have been apparent to that ALJ at the hearing that the conflict existed. And they said, even if it hadn't been – I don't see how – look, I mean, I don't want to get into what some other case did on the facts of that case. We have to deal with this. But my understanding of the hearing is that the ALJ was worried about problems like this, specifically asked the vocational expert whether there was a difference between the testimony and the dictionary. The vocational expert said no, and counsel for Mitchell did not notice the problem then. Is that a misunderstanding? That's accurate, Your Honor. Yeah. The ALJ is worried about this, asks for advice, and gets the wrong advice, and nobody corrects it. Correct. There was no correction there by either the vocational witness or the claimant's attorney. However, and this is in Apelli's response brief, as to the question of jobs numbers and the reduction in jobs numbers based on the move from frequent handling to occasional handling, there was a mention by the vocational witness that, you know, that judgment to reduce those numbers was not consistent with the Dictionary of Occupational Titles. And so there's kind of a two-headed argument here. In one sense, we're saying that it was not apparent, the conflict was not apparent. But in the next argument, Commissioner argues that, well, the vocational witness did mention there was deviation from the DOT with regard to the numbers. Appellant contends that that reduction of numbers based on moving from frequent to occasional should have made it apparent to the judge that something was going on, tipped off the judge to the fact that there was some conflict with the Dictionary of Occupational Titles, and perhaps reasonably prompted the ALJ to consult the companion publication to the DOT, the selected characteristics of occupations listed in the Dictionary of Occupational Titles, to simply see that this was a conflict. But as I said, regardless of whether the conflict was apparent, precedent matters here. This Court has held that reliance on flawed testimony, inaccurate testimony, cannot support the ALJ's ultimate conclusion with substantial evidence. In this case, it's even more glaring because this is a Step 5 case. The evidentiary burden was on the ALJ here. The only step of a Social Security Administrative decision in which the ALJ has the evidentiary burden is at Step 5, and that was the case here. And it was the judge's burden of proof of demonstrating that Ms. Mitchell, with all of her limitations, could perform a significant number of jobs in the national economy, and in doing so, the ALJ relied on vocational testimony that was demonstrably inaccurate. And so I would ask the Court to remand on that basis that the decision is not supported by substantial evidence. Thank you. Thank you, Counsel. Ms. Hahn. Good morning. May it please the Court, Lou Hahn on behalf of the Commissioner of Social Security. I'll begin where Mr. Richter left off with regard to burden, and I wanted to clarify that in Social Security cases, at all five steps of the sequential evaluation process, the burden of proof for disability is always with the claimant. Mr. Richter perhaps meant to suggest, and it is the case, that the burden of production is with the agency at Step 5 to produce other jobs that an individual could perform despite their limitations. And in this case, the ALJ, consistent with the ruling 00-4P, used and relied on a vocational expert. Opposing Counsel also referred to this expert as a witness, but again, this expert's expertise, Ms. Connie O'Brien, was not challenged by Ms. Mitchell's attorney at the hearing. And Ms. O'Brien testified as an expert in the field of job placement and vocational issues. The ALJ gave Ms. O'Brien three different hypothetical questions, the third of which matched exactly the ALJ's finding of Ms. Mitchell's limitations and work-related abilities and her vocational profile. And in response to that third hypothetical, Ms. O'Brien said that there were still jobs that Ms. Mitchell could still perform. As Your Honor noticed, the ALJ did inquire as to whether there were any inconsistencies between Ms. O'Brien's expert testimony and the dictionary. And beginning on page 69 of the transcript of this record is that series of questions between the ALJ and Ms. O'Brien about the kind of differences between her testimony and the dictionary. I want to clarify that at no point did Ms. O'Brien or the ALJ talk about conflicts. Social Security ruling 004-P describes many different sources of vocational evidence, including the dictionary of occupational titles, but also expert testimony from experts like Ms. O'Brien. And the ruling makes clear that neither the dictionary or an expert's testimony has more weight than the other. In fact, that ruling makes clear that vocational experts use their education and experience to tailor their responses and the available jobs and job numbers in these cases. And that's exactly what Ms. O'Brien did in this case. As the panel also noted, Ms. Mitchell's attorney had every opportunity to question Ms. O'Brien about her testimony. There was only one question here in the record from Ms. Mitchell's attorney, and that was about absenteeism, which has not been raised as an issue at any point by Ms. Mitchell in the lower court or before this court. Now, Ms. Mitchell is focusing on two specific limitations with regard to handling and crouching. And as opposing counsel Mr. Richter characterized, Ms. Mitchell is alleging that the vocational expert testimony on these three sample jobs was flawed, quote unquote. But at no time did Ms. Mitchell's attorney point out any flaws at the hearing. And even now, it's not at all clear how Ms. O'Brien's expert testimony was flawed. Ms. O'Brien understood the limitations as presented to her in a hypothetical question and presented the ALJ with three jobs. The ALJ was within reason to rely on that testimony in finding at step five that although at step four, Ms. Mitchell was found to not be able to do her past jobs, as the statute makes very clear, if an individual can still do other work. And in this case, that is the step five finding that Ms. O'Brien can still do other work that exists in significant numbers in the national economy. Then Ms. Mitchell is not entitled to disability benefits. That's exactly what the ALJ found here. And the focus on Overman, I will conclude because the presentation by Mr. Richter brought up that case a number of times. This court said that it is not without consequence when an attorney at the administrative hearing doesn't inquire about particular aspect of the expert's testimony. And unfortunately for Ms. Mitchell, that's what occurred here. There is no flaw. And as we contend in our brief, there's no conflict because the vocational expert used her expertise in answering the ALJ's questions. Therefore, it is our position the ALJ's decision was supported by substantial evidence. And unless your honors have any questions, the commissioner will rely on the reasons presented here today, as well as those in our brief, to ask this court affirm the commissioner's decision. Thank you, counsel. Mr. Richter, anything further? You have about 30 seconds. I would just state for the record, your honor, that there's a long history of this court with vocational expert testimony. And the boiling it down to because the vocational expert said so has never been something that this court has adopted. The vocational expert here was wrong, gave demonstrably inaccurate testimony, and therefore I'd ask that you not allow that to be relied upon here. Thank you. Thank you, counsel. The case is taken under advisement.